B. LOWENSTEIN & BROS. *v.* A. G. LOVE *et al.*

.DEED OF TRUST. *When void on its face.* A deed of trust for the benefit of all creditors, giving preference to certain creditors, and stipulating that the business of merchandising is to be continued for two years and three months, that the stock of goods conveyed in the deed is to be replenished from the proceeds of sales of goods, and that the assignor is to be retained to assist in the management of the business, etc., is void on its face, for the reason that the stipulation for the continuation of the business is for the benefit of the debtor, not the creditors.

FROM CARROLL.

Appeal from the Chancery Court at Huntingdon. JNO. SOMERS, Ch.

RANKIN & RHODES for complainants.

ALVIN HAWKINS & SON for defendants.

DEADERICK, C. J., delivered the opinion of the court.

The bill in this case was filed in January, 1880, to set aside a deed of trust made by defendant, Love, September 20, 1879, conveying to his co-defendant, Harris, as trustee, a stock of goods of the estimated value of $5,000, and notes and accounts, the amounts of which are not stated, and twelve acres of growing cotton on rented land.

The deed is made for the purpose, as recited, of securing all the creditors of the maker. A large number of the creditors, and the amounts due them, are named, the aggregate indebtedness exceeding largely the

estimated value of the stock of goods, and probably exceeding the value of all the trust property. The trust deed gives preference to a number of his creditors, and then directs the payment of other creditors, complainants being amongst those not preferred.

It is admitted, by complainants, that the deed is not fraudulent in fact, or made to hinder and delay creditors, but it is insisted by them that it is fraudulent for reasons appearing upon its face.

The chancellor held that the deed was not fraudulent and dismissed the bill, and the Referees have recommended an affirmance of the decree, and the complainants have excepted to their report.

They insist that the length of time from the execution of the deed to the date at which the foreclosure is directed, that the power given the trustee to replenish the stock of goods from the proceeds of the sale thereof, carrying on the business thus for a period of more than two years, and because, as alleged, no provision is made to pay debts until all the goods are sold, and the requirement that the maker of the deed shall be employed to assist in the sale of the goods, and other reasons stated, make the deed fraudulent upon its face.

The deed recites that he, Love, wishes the business of merchandising to be continued until the first day of January, 1882, and that said trustee should take immediate possession of the goods and cotton, and collect the debts, and from time to time, as he may deem necessary, buy new and other goods for the purpose of replenishing and keeping up said stock, and

that said trustee should retain the said Love to assist him in the management of said business, subject to the authority of said trustee.

The deed further directs that the trustee is authorized to apply any money, which may come to his hands as trustee, to the payment of said debts, and provides, if said Love should not pay said debts by January 1, 1882, the trustee is to sell, publicly or privately, at his discretion, after twenty days' notice, for cash, and distribute the proceeds.

On a question whether a deed of trust is fraudulent on its face, Judge Wright said: The stock of goods in this store, with such as may in the future be purchased and brought into the business, is conveyed to the assignee, and with them he is to traffic as any other merchant. The grantor's affairs, as they were at the time of the assignment, are not to be wound up, but just the reverse. The business is to be prosecuted, and new goods, from time to time, added, for an indefinite period, at least until Cannovan (beneficiary) directs otherwise, and the trustee was authorized to sell the goods in the ordinary course of business." * * " Property in this manner and to this extent can not be withdrawn from the operations of the law in its due course, against the consent of the creditors. Neither can property be thus withdrawn and held with a view to traffic and make gain for the benefit of the debtor. An assignment may be drawn with a stipulation for the continuance of the business of the debtor by the assignee, and when this is done as ancillary to the winding up of the debtor's affairs, and with

Lowenstein & Bros. *v.* Love.

the view of more effectually promoting the interests of creditors, it will be sustained as valid. But where a stipulation of this kind is intended chiefly for the benefit of the assignor, it will have the effect of avoiding the assignment": 1 Cold., 19, 21. See also 1 Tenn. Ch., 746; 9 Heis., 153; 4 Baxt., 42.

The case cited in 1 Coldwell is analogous in its main features to the present case. It is true the business was not to be carried on in this case for an indefinite period, nor was this so, literally, in the case cited, as the trustee was bound to sell so as to pay the debts when they matured, and to sell, when requested so to do by the beneficiary in the deed. But the objectionable features of the deed in that case, as in this, were that the property was not to be sold and proceeds applied to the maker's debts, but that goods were to be bought and sold for profit, as by other merchants, and such purchases and sales were not made merely in aid of the winding up of the debtor's affairs, but for gain. It was held in *Kindskoff* v. *Guggenheim*, 4 Coldwell, that this would not avoid the deed, but we think it has since been differently held, and in that particular the 4 Coldwell case is overruled, as it has been virtually, perhaps, by two of the cases cited, and other cases since decided by this court. In this case the business was to continue and the stock to be replenished for two years and three months, the grantor, for that time, to be employed to assist in managing the business. It is true the trustee was empowered to make payment on the debts, but this authority was, perhaps, subordinate to the duty of keep-

ing up the stock with the proceeds of the sales. He was not required to close out the stock of goods until two years and three months after the date of the deed, and after satisfying the charges and costs incident to carrying on the business, the chances would be that the trust fund would be materially diminished. The trustee was empowered, by the terms of the deed, to use all the funds derived from sales of the property conveyed in trust to keeping up the stock of goods, and this for more than two years, employing said fund in trade and speculation, instead of applying it to the satisfaction of the debts. The trust fund should, in such cases, be applied to the debts at the earliest practicable period. It should not be used for merely speculative purposes.

The result is, that the report of the Referees will be set aside, the chancellor's decree reversed, the trust deed be declared void upon its face, and decree rendered in favor of complainant, and the cause be remanded for further proceedings.